264 N.J. Super. 251 (1993)
624 A.2d 600
PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY, PLAINTIFF-RESPONDENT,
v.
TRAVELERS INSURANCE COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 22, 1993.
Decided April 29, 1993.
*253 Before Judges LONG, D'ANNUNZIO and KEEFE.
George T. Szymczak argued the cause for appellant (Farabaugh, Frieland, Smith and Hillman, attorneys, Mr. Szymczak of counsel and on the brief).
Randi S. Greenberg argued the cause for respondent (Robert A. Auerbach, attorney, Ms. Greenberg of counsel and on the brief).
The opinion of the court was delivered by KEEFE, J.A.D.
The issues presented by this appeal are: 1) whether the New Jersey Tort Claims Act, specifically N.J.S.A. 59:9-2(e), renders the underinsured motorist provisions (UIM) of a governmental entity's automobile insurance policy excess over the UIM provisions of the injured employee's personal insurance policy, and 2) if not, whether the UIM coverage afforded under both policies must be prorated in accordance with N.J.S.A. 17:28-1.1c. We hold that the provisions of N.J.S.A. 59:9-2(e) and N.J.S.A. 17:28-1.1c are irrelevant to the question of whether the governmental entity's UIM coverage is excess, concurrent or prorated with the injured employee's personal insurance policy.
The facts are not in dispute. Cris Tucci was employed as a police officer by the Borough of Roselle Park on March 11, 1989, when he was involved in an automobile accident with Andrzej Ratkiewicz. Tucci was operating a police vehicle owned by the Borough of Roselle Park at the time. The Ratkiewicz vehicle was insured by Hanover Insurance for personal injury liability indemnity in the amount of $15,000 per person/$30,000 per accident. *254 Hanover paid its single limit indemnity coverage in the amount of $15,000 to Tucci.
The Roselle Park police vehicle was insured by defendant Travelers Insurance Company. The policy contained $1,000,000 uninsured/underinsured motorist coverage. Travelers admits that Tucci was a covered person under the UIM provisions of its policy. At the same time, Tucci was an insured under a personal insurance policy issued by plaintiff Prudential Property and Casualty Insurance Company (Prudential) which contained uninsured/underinsured motorist coverage in the amount of $100,000. Tucci instituted arbitration proceedings against Prudential and Travelers, seeking UIM benefits on the grounds that his injuries exceed the $15,000 he received from Hanover.
A three member arbitration panel awarded Tucci $75,000. The gross award was reduced by 25% representing Tucci's contributory negligence, and by another $15,000, representing the amount paid Tucci by Hanover. Thus, the net award to Tucci was $41,250.
A dispute arose between Prudential and Travelers concerning their relative contribution to Tucci's award. Prudential instituted a declaratory judgment action against Travelers.[1] In the declaratory judgment action, Prudential maintained that the Travelers policy provided UIM coverage to Tucci as a permissive user of the police vehicle, and that the UIM coverage provided by Travelers must be prorated with Prudential's coverage pursuant to N.J.S.A. 17:28-1.1(c). Travelers maintained in its answer and counterclaim that, while Tucci was a covered person under the Travelers UIM endorsement, Prudential's UIM coverage was "primary" while the Travelers coverage was "secondary and excess" over that of Prudential.
Travelers moved for summary judgment and Prudential cross-moved. The Law Division judge, relying essentially on an unreported opinion of this court in Urban v. Harleysville Insurance Company, et al, A5880-88, decided June 11, 1990, held that the *255 Tort Claims Act did not apply to this fact situation, and that coverage must be prorated under N.J.S.A. 17:28-1.1. Thus, he granted Prudential's cross-motion for summary judgment from which Travelers now appeals. For the reasons stated herein, we affirm that part of the judgment which holds that the Tort Claims Act is inapplicable, but reverse that part of the judgment which applies the provisions of N.J.S.A. 17:28-1.1(c).

I.
Travelers relies upon N.J.S.A. 59:9-2e to justify its position that its UIM coverage is excess over that of Prudential's. That provision of the Tort Claims Act provides as follows:
If a claimant receives or is entitled to receive benefits for the injuries allegedly incurred from a policy or policies of insurance or any other source other than a joint tortfeasor, such benefits shall be disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award against a public entity or public employee recovered by such claimant; provided, however, that nothing in this provision shall be construed to limit the rights of a beneficiary under a life insurance policy. No insurer or other person shall be entitled to bring an action under a subrogation provision in an insurance contract against a public entity or public employee.

[N.J.S.A. 59:9-2e].
Travelers maintains that the offset or deduction provisions of the foregoing paragraph require the UIM coverage provided by Prudential to be fully utilized before the Travelers UIM coverage on behalf of the public entity is applied to the arbitration award.
Travelers' interpretation of the statute is neither supported by the wording of the statute or case law. The question of whether Tucci is a "claimant" who received an "award" within the meaning of the statute requires an understanding of the legislative scheme of the Tort Claims Act as a whole. Initially, we observe that the legislative comment relative to the paragraph upon which Travelers now relies states:
The intent of subparagraph (e) is to prohibit the receipt of duplicate benefits by a claimant filing suit under the act.
Tucci is not a claimant in the context of the notice provisions of the Act. N.J.S.A. 59:8-1 to 11. His claim against Travelers was *256 not filed "under the Act" but rather pursuant to the contractual provisions of the policy of insurance between Travelers and the Borough of Roselle Park of which Tucci was an intended beneficiary. Without question, Tucci's claim against Travelers was essentially rooted in contract. Christy v. City of Newark, 102 N.J. 598, 610, 510 A.2d 22 (1986). Indeed, Tucci's claim is not a tort claim against a public entity. As an employee, the Workers' Compensation Act bars any claim by Tucci against his employer arising out of tort. Id. at 609, 510 A.2d 22; see also N.J.S.A. 59:1-5; N.J.S.A. 34:15-43 (specifically entitling public employees to the benefits of the Workers' Compensation Act). Furthermore, the "award" against a "public entity" referenced in the statute refers to one that is given in accord with a trial conducted pursuant to N.J.S.A. 59:9-1 and the limiting provisions of N.J.S.A. 59:9-2a to d.
In Christy, supra, the City of Newark contended that "the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to :12-3, immunize[d] the City against claims for [uninsured motorist] benefits allegedly due because of the negligence of a third-party uninsured motorist." 102 N.J. at 610, 510 A.2d 22. Although the City relied upon the specific words of a different provision of the Act, N.J.S.A. 59:2-1(a) rather than N.J.S.A. 59:9-2(e) as in this case, the Supreme Court rejected the City's claim, observing that the immunity provided to public entities under the Act is "in terms of tort liability" while the uninsured motorist (UM) claim presented there was "one arising out of contract[.]" Id.
Contrary to Travelers' argument on appeal, the subsequent case of Ross v. Transport of New Jersey, 114 N.J. 132, 553 A.2d 12 (1989) did not diminish the impact of the Christy analysis in cases where the public entity has voluntarily provided UM/UIM coverage. In Ross, the issue was whether New Jersey Transit Bus Operations, Inc., a public entity which has no obligation under law either to carry insurance or to self-insure, nonetheless had the obligation to provide UM coverage for the benefit of a passenger who was injured in a motor vehicle accident between the bus and an uninsured vehicle. Id. at 134, 553 A.2d 12. In holding that Transport of New Jersey was exempt from providing UM coverage, *257 the Court merely observed that its conclusion was consistent with Transport's tort protection under the Tort Claims Act. Id. at 145, 553 A.2d 12. The Court's observation that nothing in the Tort Claims Act requires a public entity to be liable for the acts of another, in that case the conduct of an uninsured operator, supports our conclusion that Tucci's claim in this case is based upon contract rather than the tort responsibility of a public entity. Interestingly, the Ross Court observed that, had Transport decided to insure or to self-insure, it would have been forced to comply with the provisions of N.J.S.A. 17:28-1.1 and provide UM coverage. Id. at 142, 553 A.2d 12.[2]
We acknowledge the Ross court's observation that "an uninsured motorist claim is a statutory cause of action which has many characteristics of a tort action." Id. at 145, 553 A.2d 12. However, as pointed out in Christy, once UM or UIM coverage is provided by the public entity, a claim is essentially one arising out of contract against the insurance provider. Christy, supra, 102 N.J. at 610, 510 A.2d 22. The tort aspect of the claim governs only the issue of whether a claimant's entitlement to benefits must be offset by reason of the claimant's comparative fault.
We conclude from the foregoing analysis that N.J.S.A. 59:9-2(e) was intended to protect a public entity by abrogating the collateral source rule with respect to tort-based claims brought against the entity, in that it requires the collateral source benefits to which a claimant is entitled be deducted from the tort liability of the public entity. However, Tucci's claim against Travelers for UIM benefits is not a claim against the public entity based on tort, either directly or derivatively.[3] Thus, the statute does not apply.

*258 II.
Prudential maintains that, if N.J.S.A. 59:9-2(e) does not work to the benefit of Travelers, N.J.S.A. 17:28-1.1(c) mandates that the respective coverages be prorated. The trial judge agreed, relying upon Urban v. Harleysville, supra. We disagree.
Both Urban and Rox v. Allstate Ins. Co., supra, were UM coverage cases. N.J.S.A. 17:28-1.1(c) provides in pertinent part:
If the insured had uninsured motorist coverage available under more than one policy, and recovery shall not exceed the higher of the applicable limits of the respective coverages and the recovery shall be prorated between the applicable coverages as the limits of each coverage bear to the total of the limits.
Clearly, the literal provisions of the statute require UM benefits to be prorated, not UIM benefits. Prudential essentially argues on appeal that, although the statute does not specifically provide for prorated UIM benefits, we should construe the statute to require such a result, since in other situations we have treated UM and UIM coverage in the same manner. See Longworth v. Van Houten, 223 N.J. Super. 174, 184-186, 538 A.2d 414 (App.Div. 1988) (The legislative purpose of providing maximum and expeditious protection to innocent victims of financially irresponsible motorists applies equally to UM and UIM claims). However, Longworth cannot be read to hold that UM and UIM coverage provisions should be treated the same in all circumstances. The very holding of Longworth was to the contrary. The Longworth court found that the subrogation and consent-to-settle clauses in the UIM policies under consideration were contrary to the legislative purpose of affording such coverage, while subrogation in UM clauses was not in conflict with the legislative intent. Id. at 186, n. 6, 538 A.2d 414.
*259 We can find nothing in N.J.S.A. 17:28-1.1, or in the legislative policy undergirding the statute, which suggests that the failure to mention UIM coverage in the sentence providing for prorated UM benefits was an oversight. When the Legislature intended to treat the coverages in the same manner, it specifically mentioned both forms of insurance. For example, in the first sentence of N.J.S.A. 17:28-1.1(c) the Legislature provided:
Uninsured and underinsured motorist coverage provided for in this section shall not be increased by stacking the limits of coverage of multiple motor vehicles covered under the same policy of insurance nor shall these coverages be increased by stacking the limits of coverage of multiple policies available to the insured.
In the very next sentence of the same paragraph, the Legislature addressed the question of prorating of UM coverage, omitting reference to UIM coverage, although aware of the fact, as evidenced in the first sentence of the paragraph, that "multiple policies" might be available to any party.
There is additional evidence of the Legislature's intent to treat UM and UIM coverage differently within N.J.S.A. 17:28-1.1. Subparagraph a of the section mandates UM coverage in motor vehicle liability policies while subparagraph b requires only that UIM coverage be provided as "an option ... to the named insured[.]" Further, although the Legislature was aware that "multiple policies" might provide UIM coverage, [N.J.S.A. 17:28-1.1(c)], it specifically provided that to determine whether a motor vehicle was underinsured, the limits of liability for that vehicle should be compared against the UIM limits of the motor vehicle insurance policy "held by the person seeking that recovery," rather than with respect to the limits of any other policies that may apply to the benefit of the claimant. See, N.J.S.A. 17:28-1.1(e). Finally, the terms of UM coverage, but not UIM coverage, are subject to approval by the Commissioner of Insurance, "including but not limited to ... nonduplication of coverage[.]" N.J.S.A. 17:28-1.1(d).
In essence, UIM coverage is "personal" to the insured, "provid[ing] as much coverage as the insured is willing to purchase, for his or her protection subject only to the owner's policy *260 liability limits for personal injury and property damage to others." Clegg v. Auto. Full Underwriting, 254 N.J. Super. 634, 638, 604 A.2d 179 (App.Div. 1992), quoting Nikiper v. Motor Club of America Cos., 232 N.J. Super. 393, 399, 557 A.2d 332 (App.Div.), certif. denied, 117 N.J. 139, 564 A.2d 863 (1989). The expectation of an insured, such as Tucci, who purchases a policy of insurance containing UIM coverage is that he is buying such protection up to the declared limits "primarily for himself" and anyone else who is insured on the same basis under the policy. Id. 254 N.J. Super. at 640, 604 A.2d 179. Any other policy of insurance which affords him coverage necessarily does so on the basis of his status as a third party beneficiary of the contract of insurance between the insurer and the purchaser of the policy. Given the statutory structure for UIM coverage, and the expectations of an insured who purchases such coverage, there is no policy reason evidenced by the legislative scheme requiring the coverage to be prorated.
Thus, in our view, the manner in which multiple policies providing UIM coverage are to be applied in a given circumstance requires the parties to turn to the provisions of the respective policies rather than the statute. See Clegg v. Auto Full Underwriting, supra; Universal Underwriters v. Atlantic Emp., 259 N.J. Super. 74, 611 A.2d 165 (Law Div. 1992). Although the parties have provided us with copies of their respective insurance policies, they did not brief or argue issues that may be relevant to a resolution of this dispute based on the applicable policy language. Thus, we deem it advisable to remand the matter for further proceedings in the Law Division consistent with this opinion.
NOTES
[1] Tucci was also named as a party but did not participate in the proceedings.
[2] Ross dealt with a question of uninsured motorist coverage, not underinsured motorist coverage as in this case. Thus, the provisions of N.J.S.A. 17:28-1.1 mandate the purchase of UM coverage, but make the purchase of UIM coverage optional.
[3] We note that Rox v. Allstate Ins. Co., 250 N.J. Super. 536, 543, 595 A.2d 563 (Law Div. 1991) comes to the same conclusion in the context of a UM claim. To the extent that State Farm v. Woodbridge Tp., 251 N.J. Super. 373, 378, 598 A.2d 252 (Law Div. 1991) and Allstate Ins. Co. v. Alvarado, 227 N.J. Super. 152, 157-158, 549 A.2d 905 (Law Div. 1988), both decided in connection with UM claims, come to a different conclusion, we disapprove of their rationale. In terms of the non-applicability of N.J.S.A. 59:9-2(e), we see no distinction between a UM and a UIM claim.