141 N.J. 235 (1995)
661 A.2d 785
PRUDENTIAL PROPERTY & CASUALTY INSURANCE COMPANY, PLAINTIFF-RESPONDENT,
v.
MONMOUTH COUNTY MUNICIPAL JOINT INSURANCE FUND, DEFENDANT-APPELLANT, AND SCIBAL INSURANCE GROUP AND TIMOTHY HOLMAN, DEFENDANTS.
The Supreme Court of New Jersey.
Argued February 28, 1995.
Decided May 25, 1995.
*236 Linda Hayes Grasso argued the cause for appellant (Cleary & Alfieri, attorneys; James J. Cleary, of counsel).
Randi S. Greenberg argued the cause for respondent (Robert A. Auerbach, attorney).
The opinion of the Court was delivered by STEIN, J.
This appeal concerns the liability of a municipality's insurance carrier (or self-insurance fund) for uninsured-motorist (UM) benefits to a covered employee who also has UM benefits available under his automobile-insurance policy. The municipality asserts that the overriding philosophy of public-entity immunity from tort liability under the New Jersey Tort Claims Act (Tort Claims Act), N.J.S.A. 59:1-1 to 12-3, would be circumvented if municipal-insurance coverage were to be liable on a pro rata basis for UM benefits payable because a public employee was injured by an uninsured motorist. The employee's carrier contends that the Tort Claims Act is irrelevant, that the employee carrier's policy and the municipality's coverage are contractual obligations only, and that pro rata contribution to pay the employee's claim is mandated by statute, see N.J.S.A. 17:28-1.1c (requiring proration of UM coverages).
In April 1990, defendant Timothy Holman, a Neptune Township (Neptune) police officer, was on duty driving a police vehicle when he was involved in an accident with a hit-and-run driver. At that time, Holman was insured under an automobile-insurance policy with plaintiff, Prudential Property and Casualty Insurance Company (Prudential), which provided UM coverage in the amount of *237 $100,000 per person and $300,000 per accident. Neptune was insured by defendant Monmouth County Municipal Joint Insurance Fund (JIF), a municipal self-insurance fund, which provided UM coverage for Neptune and its employees in the amount of $200,000 per person and accident.
In May 1992, Holman filed for UM arbitration under the Prudential and JIF policies, seeking UM benefits for his injuries caused by the hit-and-run driver. In September 1992, Prudential filed a complaint for declaratory judgment in the Law Division, contending that any arbitration award for UM benefits should be prorated between it and JIF pursuant to N.J.S.A. 17:28-1.1c. JIF argued that the letter and spirit of the Tort Claims Act required that Holman exhaust his coverage with Prudential before seeking payment for any arbitration award from JIF.
On cross-motions for summary judgment, the Law Division, relying on Christy v. City of Newark, 102 N.J. 598, 510 A.2d 22 (1986), held that because UM claims are contractual obligations on the part of the insurer, the Tort Claims Act was not applicable. Accordingly, it found that N.J.S.A. 17:28-1.1c required proration between Prudential and JIF of any arbitration award to which Holman might be entitled. The Appellate Division affirmed, 274 N.J. Super. 345, 644 A.2d 133 (1994), observing that it based its holding on the analysis set forth in Prudential Property & Casualty Insurance Co. v. Travelers Insurance Co., 264 N.J. Super. 251, 624 A.2d 600 (App.Div. 1993) (Prudential v. Travelers), which
held that N.J.S.A. 59:9-2e [(prohibiting receipt of duplicate benefits by claimant and subrogation claims by insurance carriers against public entities)] did not provide authority for the conclusion that a municipality's underinsured motorist (UIM) coverage was excess over the UIM coverage provided by the injured police officer's personal UIM coverage. In a footnote, we observed that there were conflicting decisions on that point in the Law Division with respect to UM claims. However, we noted that `[i]n terms of the nonapplicability of N.J.S.A. 59:9-2e, we see no distinction between a UM and a UIM claim[,]' and agreed with [the Law Division's] analysis of the question in Rox v. Allstate Ins. Co. * * *.
[274 N.J. Super. at 347-48, 644 A.2d 133 (citations omitted).]
We granted certification, 138 N.J. 268, 649 A.2d 1288 (1994), and now affirm substantially for the reasons stated in the Appellate *238 Division opinion. We add these observations to supplement the Appellate Division's analysis.
The Compulsory Motor Vehicle Insurance law, N.J.S.A. 39:6B-1 to -3, requires every owner of a motor vehicle registered or principally garaged in New Jersey to "maintain motor vehicle liability insurance coverage" insuring against liability for bodily injury, death, and property damage. N.J.S.A. 39:6B-1. See also N.J.S.A. 39:6A-3 (requiring automobile owners to maintain automobile-liability coverage). The UM statute, N.J.S.A. 17:28-1.1, requires all motor-vehicle liability policies to include UM coverage. See also N.J.S.A. 39:6A-14 (requiring automobile owners to carry UM coverage). The UM statute provides in pertinent part:
Uninsured and underinsured motorist coverage provided for in this section shall not be increased by stacking the limits of coverage of multiple motor vehicles covered under the same policy of insurance nor shall these coverages be increased by stacking the limits of coverage of multiple policies available to the insured. If the insured had uninsured motorist coverage available under more than one policy, any recovery shall not exceed the higher of the applicable limits of the respective coverages and the recovery shall be prorated between the applicable coverages as the limits of each coverage bear to the total of the limits.

[N.J.S.A. 17:28-1.1c (emphasis added).]
JIF acknowledges that as a self-insurance fund for municipalities it is obligated to provide UM coverage for Neptune. 274 N.J. Super. at 347, 644 A.2d 133. See Ross v. Transport of New Jersey, 114 N.J. 132, 139, 553 A.2d 12 (1989); Christy, supra, 102 N.J. at 607-08, 510 A.2d 22; Mortimer v. Peterkin, 170 N.J. Super. 598, 599-600, 407 A.2d 1235 (App.Div. 1979); Transport of New Jersey v. Watler, 161 N.J. Super. 453, 462-63, 391 A.2d 1240 (App.Div. 1978), aff'd as modified, 79 N.J. 400, 400 A.2d 61 (1979); Rox v. Allstate Ins. Co., 250 N.J. Super. 536, 541, 595 A.2d 563 (Law Div. 1991).
Conceding that it must provide UM coverage, JIF nonetheless argues that construing N.J.S.A. 17:28-1.1c to require prorated UM coverage between a private insurer and a self-insured municipality is inconsistent with the Tort Claims Act, specifically N.J.S.A. 59:9-2e. JIF contends that such an interpretation frustrates the Tort Claims Act's objectives and imposes greater *239 financial liability on a municipality for a third party's negligence than it does for the municipality's negligence. Specifically, JIF stresses that under N.J.S.A. 59:9-2e, benefits available to a claimant from collateral sources that "duplicate[] any benefit contained in the award" against a public entity are deducted from the amount of the public entity's liability, even though that liability is based on the fault of the public entity or its employees. JIF asserts that in this case the public entity was not at fault, but nevertheless has been required by the lower courts to contribute pro rata with Prudential to compensate Holman for his injuries.
The Legislature enacted the Tort Claims Act to establish qualified governmental immunity for the negligent acts of governmental entities and their employees. See N.J.S.A. 59:1-2. In adopting the Tort Claims Act, the Legislature "declared [it] to be the public policy of this State that public entities shall only be liable for their negligence within the limitations of [the Tort Claims Act] and in accordance with the fair and uniform principles established [t]herein." Ibid. Although this Court has emphasized that immunity is the dominant consideration of the Tort Claims Act, see, e.g., Weiss v. New Jersey Transit, 128 N.J. 376, 383, 608 A.2d 254 (1992); Rochinsky v. State, Dep't of Transp., 110 N.J. 399, 408, 541 A.2d 1029 (1988), "[n]othing in [the Tort Claims Act] shall affect liability based on contract or the right to obtain relief other than damages against the public entity or one of its employees." N.J.S.A. 59:1-4.
The specific provision of the Tort Claims Act that JIF relies on is N.J.S.A. 59:9-2e, which states in pertinent part:
If a claimant receives or is entitled to receive benefits for the injuries allegedly incurred from a policy or policies of insurance or any other source other than a joint tortfeasor, such benefits shall be disclosed to the court and the amount thereof [that] duplicates any benefit contained in the award shall be deducted from any award against a public entity or public employee recovered by such claimant * * *.
The "intent of subparagraph (e) is to prohibit the receipt of duplicate benefits by a claimant filing suit under the [Tort Claims Act]." N.J.S.A. 59:9-2 cmt. See also Prudential v. Travelers, *240 supra, 264 N.J. Super. at 257, 624 A.2d 600 (stating that N.J.S.A. 59:9-2e abrogates the collateral-source rule in respect of tort-based claims against public entities); Murray v. Nicol, 224 N.J. Super. 303, 312, 540 A.2d 239 (App.Div. 1988) (same). JIF contends that an additional purpose of N.J.S.A. 59:9-2e is to hold public entities secondarily liable in respect of tort liability. That is, in cases in which the public entity is a tortfeasor, benefits obtainable from outside sources must be resorted to first before the public entity is required to pay damages. JIF asserts that the same policy should apply to a public entity's obligation to provide UM coverage, reasoning that because UM benefits constitute a contractual substitute for tort liability, the Tort Claims Act's philosophy should control the allocation of UM benefits available under multiple policies.
JIF's argument based on N.J.S.A. 59:9-2e is unsupported either by that provision's wording or by the purpose underlying the Tort Claims Act. The primary objective of N.J.S.A. 59:9-2e, avoidance of duplicate benefits to those who seek tort damages from a public entity, will not be thwarted by prorating the UM benefits. Holman's damages will be fixed by the arbitrator, and the proration of those damages between Prudential and JIF will cause Holman to be compensated only once. Additionally, neither Holman nor Prudential is asserting a claim against Neptune or its employees for damages sounding in tort. See Prudential v. Travelers, supra, 264 N.J. Super. at 255-57, 624 A.2d 600. Nor is Holman a claimant in the context of the provisions of the Tort Claims Act. See N.J.S.A. 59:8-1 to -11; see also Prudential v. Travelers, supra, 264 N.J. Super. at 256, 624 A.2d 600 (stating that "award" against "public entity" referenced in N.J.S.A. 59:9-2e "refers to one that is given in accord with a trial conducted pursuant to N.J.S.A. 59:9-1 and the limiting provisions of N.J.S.A. 59:9-2a to d").
Because the proration of UM benefits under N.J.S.A. 17:28-1.1c is not an effort to seek tort "damages against [a] public entity or one of its employees" either directly or derivatively, see N.J.S.A. *241 59:1-4, we hold that the Tort Claims Act, specifically N.J.S.A. 59:9-2e, is inapplicable. Moreover, we conclude that entirely different legislative objectives, unrelated to the purposes underlying the Tort Claims Act, compel JIF's pro rata contribution. Those objectives include the legislative determination that the requirement of compulsory insurance includes the obligation to carry UM coverage, see N.J.S.A. 17:28-1.1, an obligation that has been held to apply to public entities. See, e.g., Ross, supra, 114 N.J. at 139, 553 A.2d 12; Christy, supra, 102 N.J. at 607-08, 510 A.2d 22. Furthermore, the Legislature has determined that when more than one policy providing UM coverage is available to compensate a claimant for injuries, those policy benefits should be allocated on a pro rata basis without regard to whether any of the insureds are public entities. See N.J.S.A. 17:28-1.1c. Thus, the advantage of requiring claimants to exhaust other sources of benefits as a condition of public-entity liability afforded by the Tort Claims Act is unavailable to JIF because the Legislature has determined that a different policy requiring the proration of benefits is controlling in the context of UM coverage.
In addition, JIF argues that the principle of sovereign immunity should not be swept aside because of the "putative contractual basis" of a UM claim, see Ross, supra, 114 N.J. at 144, 553 A.2d 12, and maintains that we should reject the distinction between tort and contract for determining whether N.J.S.A. 59:9-2e applies in the context of recovery under a UM policy. JIF points out that this Court has noted in Ross, supra, 114 N.J. at 144-45, 553 A.2d 12, and Midland Insurance Co. v. Colatrella, 102 N.J. 612, 617, 510 A.2d 30 (1986), that a UM provision effectively functions as a contractual substitute for a tort action against an uninsured motorist, and recovery under a UM policy is regarded "as damages" by statute, N.J.S.A. 17:28-1.1a. Thus, JIF contends that because UM coverage is a tort substitute, N.J.S.A. 59:9-2e should apply to those cases in which the injured party is attempting to recover UM benefits from both his or her personal-insurance carrier and the public entity's carrier. We also find that contention *242 to be without merit. See Christy, supra, 102 N.J. at 610, 510 A.2d 22.
In Christy, supra, this Court was presented with an almost identical argument  that is, that the Tort Claims Act, specifically N.J.S.A. 59:2-1a, "immunizes the [municipality] against claims for UM benefits allegedly due because of the negligence of a third-party uninsured motorist." 102 N.J. at 610, 510 A.2d 22. There, a police officer who had been injured by a hit-and-run motorist sought UM benefits under both his automobile-insurance policy and the municipality's self-insurance scheme. The Court found that that statute was "couched in terms of tort liability," and because that officer's "claim [was] one arising out of contract," the municipality was obliged "to furnish UM benefits." Ibid. This Court then remanded the case to the Law Division to determine which carrier would provide primary insurance coverage because that "case arose before January 1, 1984, the effective date of the so-called `anti-stacking' legislation, L. 1983, c. 362, § 2(c), codified in N.J.S.A. 17:28-1.1(c)." 102 N.J. at 610, 510 A.2d 22. However, because N.J.S.A. 17:28-1.1c now provides for proration between insurance carriers, the question of primary coverage has been superseded by statute. See, e.g., Rox, supra, 250 N.J. Super. at 543, 595 A.2d 563.
Contrary to JIF's argument, Ross, supra, and Colatrella, supra, are inapposite to these facts and do not diminish the continued force of Christy. See Downey v. City of Elizabeth, 273 N.J. Super. 335, 338 n. 1, 641 A.2d 1109 (App.Div. 1994); see also Prudential v. Travelers, supra, 264 N.J. Super. at 256, 624 A.2d 600 (stating that Ross, supra, "did not diminish the impact of the Christy analysis in cases where the public entity has voluntarily provided UM/UIM coverage").
In Ross, supra, the issue was whether New Jersey Transit Bus Operations, Inc. (Transit), which as a public entity had no obligation to carry insurance or to self-insure, see N.J.S.A. 39:6-54 (exempting government-owned vehicles from insurance obligations), nevertheless had to provide UM coverage for the benefit *243 of a bus passenger who had been injured in a motor-vehicle accident involving the bus and an uninsured vehicle. In holding that "Transit [was] exempt from providing UM coverage," the Court observed that its conclusion was "consistent with Transit's tort protection under the Tort Claims Act." 114 N.J. at 145, 553 A.2d 12. The Court noted that the "public policy behind the Tort Claims Act and the N.J.S.A. 39:6-54 exemption [was] not inconsistent with the public polic[y] favoring UM coverage * * * given the statutory scheme involved in [that] case. * * * Therefore, [that was] a limited situation where the public policy for UM coverage [was] overridden by a statutory exception * * *." Id. at 146, 553 A.2d 12. Significantly, we further noted that if Transit were either to insure or to self-insure, it would have been forced to comply with N.J.S.A. 17:28-1.1 and provide UM coverage. Id. at 142, 553 A.2d 12.
In Colatrella, supra, the issue was whether a workers'-compensation carrier could seek reimbursement from an employee who had been injured by a hit-and-run motorist and had received both workers'-compensation and UM benefits. N.J.S.A. 34:15-40(b) provides that an injured employee who receives compensation benefits and later recovers a greater sum from a third person liable for those injuries must reimburse the employer or its compensation carrier to the extent of benefits paid. We observed that that statute makes no mention of how the recovery of UM benefits should be treated. However, because recovery under UM insurance is premised on the tortious conduct of another, the Court imposed a workers'-compensation lien as a judicial remedy to assure that the Workmen's Compensation statute and the UM statute functioned as the Legislature had intended. 102 N.J. at 618. We "base[d] our decision on the belief that the primary concern of the Legislature [in that case], as in other work-related injuries caused by third-party tortfeasors, [was] to integrate the sources of recovery." Ibid. Critical to our decision was the fact that the workers'-compensation and UM benefits exceeded the value of the employee's injuries. As we subsequently determined, our holding in Colatrella would not apply to cases "[w]here an *244 injured party's combined compensation and UM recoveries do not indemnify him in full for his loss." Charnecky v. American Reliance Ins. Co., 249 N.J. Super. 91, 94, 592 A.2d 17 (App.Div. 1991), aff'd o.b., 127 N.J. 188, 603 A.2d 512 (1992).
We acknowledge our observations in Ross and Colatrella that a UM claim is a statutory cause of action that has many tort-like characteristics, but we nevertheless view a UM claim as a tort substitute for the injured party's claim against the uninsured driver and not against the public entity. See Christy, supra, 102 N.J. at 610, 510 A.2d 22 (stating that claim for UM benefits is not "`one in which a claim for tort has been asserted against'" a municipality). A UM claim is simply a contractual right asserted against an insurance company for its contractual liability derived from the negligence of the errant driver and his or her failure to carry insurance. As this Court noted in Christy, supra, a claim for UM benefits should be regarded as one arising out of contract, 102 N.J. at 610, 510 A.2d 22, and hence, the Tort Claims Act is not implicated.
In sum, we hold that where a public-entity employee is injured while working by an uninsured motorist, and seeks UM benefits from both the public entity's insurer and his or her personal-insurance carrier, any arbitration award of UM benefits must be prorated pursuant to N.J.S.A. 17:28-1.1c.
Judgment affirmed.
For affirmance  Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN, and COLEMAN  6.
Opposed  None.