**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1514-16T3

CHARMAINE CASTELLI,

    Plaintiff-Respondent,

v.

ALLSTATE INSURANCE COMPANY,

    Defendant-Appellant.

_____

Argued March 15, 2018 — Decided July 10, 2018

Before Judges Simonelli, Haas and Rothstadt.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-2235-14.

Frederic J. Regenye argued the cause for appellant (Kenneth N. Lipstein, attorneys; Frederic J. Regenye, on the briefs).

Alex Lyubarsky argued the cause for respondent (Wilentz, Goldman & Spitzer, PA, attorneys; Randall J. Richards, of counsel; Alex Lyubarsky, on the brief).

PER CURIAM

In this insurance coverage case, defendant Allstate Insurance Company (Allstate) appeals from the August 7, 2015 Law Division

order, denying its motion for summary judgment and granting summary judgment to plaintiff Charmaine Castelli. Allstate also appeals from the September 18, 2015 order denying its motion for reconsideration; the July 22, 2016 order denying its motion to vacate the prior orders; and the November 7, 2016 consent judgment.[1] We reverse.

We derive the following facts from the evidence submitted by the parties in support of, and in opposition to, the summary judgment motion, viewed in the light most favorable to the party who opposed entry of summary judgment. Edan Ben Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 135 (2017).

On September 22, 2011, plaintiff was injured while a passenger in a vehicle owned and operated by Luis Ruiz. Ruiz's vehicle was struck in the rear by a vehicle owned by Elizabeth Rodriguez-Garcia and operated by Cindy Parreno.[2]

GEICO insured Rodriguez-Garcia's vehicle under a policy that had a $15,000 bodily injury limit. Allstate insured Ruiz's

---

[1] Allstate consented to entry of judgment in the amount of $85,000. The consent judgment is appealable because it reserved Allstate's right to appeal the coverage issue and made payment contingent on the outcome of this appeal. See Whitfield v. Bonanno Real Estate, 419 N.J. Super. 547, 550-51 and n. 3 (App. Div. 2011); Janicky v. Point Bay Fuel, Inc., 410 N.J. Super. 203, 207 (App. Div. 2009).

[2] We shall sometimes refer to Rodriguez-Garcia and Parreno collectively as the tortfeasors.

vehicle. The policy listed Ruiz as the named insured and provided $100,000 in underinsured motorist (UIM) coverage to the named insured, spouse of the named insured, and resident relatives of the named insured. The policy had a step-down provision limiting UIM coverage to $15,000 for those who were not in those categories. The policy also had a fraud or misrepresentation provision, which stated coverage would be denied if "any insured person has made false statements or concealed any material fact or circumstance in connection with any claim for which payment is sought under this policy[.]"

On September 27, 2011, Ruiz advised Allstate that plaintiff was his resident daughter-in-law and was injured in the accident. On September 30, 2011, plaintiff's representative also advised Allstate that plaintiff was Ruiz's resident daughter-in-law.

Without notifying Allstate, plaintiff filed a complaint against the tortfeasors in December 2012, and settled for the $15,000 bodily injury policy limit on January 6, 2014. Without notifying Allstate of the settlement, on January 8, 2014, plaintiff made a claim for UIM benefits under Ruiz's policy and gave Longworth[3] notice, stating that unless she received written notice of Allstate's intention to pursue its subrogation rights against

---

[3] Longworth v. Van Houten, 223 N.J. Super. 174 (App. Div. 1988).

the tortfeasors within thirty days, she would accept the $15,000 bodily injury policy limit and execute a release. The UIM claim/Longworth notice identified plaintiff as a passenger in Ruiz's vehicle, but did not specify whether she was a resident relative of Ruiz. On February 10, 2014, plaintiff sent Allstate a second Longworth notice, which extended the thirty-day deadline for an additional ten days.

Again without notifying Allstate, plaintiff executed a release to the tortfeasors on March 10, 2014, received a settlement check in the amount of $15,000 on March 17, 2014, and dismissed the lawsuit she had filed against the tortfeasors with prejudice on March 21, 2014.

On April 1, 2014, Allstate notified plaintiff it was still investigating her UIM claim and sent her a notice of claim form with instructions to complete and return. The form sought verification of her address and relationship to the named insured, among other things. Allstate advised plaintiff it would attempt to resolve the claim once it received the requested information.

Plaintiff did not return the notice of claim form. Instead, on April 14, 2014, she filed a verified complaint against Allstate, seeking a declaration that her UIM claim fell within the policy's UIM provision, and compelling Allstate to proceed to arbitration. Plaintiff alleged that at the time of the accident she was a

passenger in vehicle insured by Allstate and did not own a motor vehicle or reside with any relative who owned an insured motor vehicle. However, she did not reveal she had finalized the settlement with the tortfeasors, executed a release, received the settlement funds, and dismissed her lawsuit against them with prejudice.

Allstate filed an answer, asserting as affirmative defenses that "[p]laintiff is not an insured under the policy under which claim is made and no benefits are owed[,]" "[p]laintiff is excluded from [UIM] . . . coverage under the insurance policy under which claim is made[,]" and "[p]laintiff is subject to a stepdown clause of the insurance policy which limits or excludes coverage in this matter."

In a May 12, 2014 letter, GEICO advised plaintiff that Parreno would provide an affidavit confirming there was no other insurance available. Plaintiff submitted a copy of the letter to Allstate, leading Allstate to believe her claim against the tortfeasors was pending. On May 20, 2014, plaintiff provided Parreno's affidavit of no insurance to Allstate, again leading Allstate to believe her claim against the tortfeasors was still pending.

On May 21, 2014, plaintiff served answers to interrogatories. She certified that Ruiz was her father-in-law, he resided in Carteret, and she resided in Iselin. She attached her hospital

records dated the day of the accident, which showed that Ruiz's son, George Ruiz (George) was her spouse and they resided at the same address in Carteret where Ruiz resided.

Based on this information, in a July 25, 2014 letter, Allstate granted Longworth consent to settle with the tortfeasors and advised plaintiff that it made "no coverage references with [the] letter. It only applies to the Longworth subrogation rights." Allstate was unaware at the time that plaintiff was not a resident relative of Ruiz and had already settled the claim against the tortfeasors, received the settlement funds, executed a release, and dismissed the lawsuit against them with prejudice.

On October 30, 2014, plaintiff was deposed and confirmed that she resided with Ruiz and George in Carteret at the time of the accident, but revealed for the first time that she was not married to George and Ruiz was not legally her father-in-law. She testified that she referred to Ruiz affectionately as her father-in-law because she and George had been in a long-term romantic relationship and Ruiz considered her a daughter.

Based on plaintiff's sworn deposition testimony, on November 18, 2014, Allstate notified her that the policy's step-down provision applied, coverage was limited to $15,000, and she had no claim for UIM benefits under the policy because that coverage

was co-equal to the bodily injury coverage available to the tortfeasors.

Both parties moved for summary judgment. In denying Allstate's motion and granting plaintiff's motion, the motion judge focused on whether plaintiff was a resident relative of Ruiz at the time of the accident and did not consider whether plaintiff and Ruiz misrepresented that she was his daughter-in-law. The judge noted that plaintiff's interrogatory answers, which Allstate received before granting Longworth consent to settle, indicated she was not a resident relative of Ruiz because she did not reside at his Carteret address. Thus, the judge determined Allstate was not deceived in any way into granting Longworth consent to settle.

Allstate responded that plaintiff's sworn deposition testimony confirmed she resided with Ruiz at the time of the accident, but was not his daughter-in-law. The judge did not reconsider his ruling, but instead replied:

> Because I've got other things to go through. [Defense] [c]ounsel, if you can demonstrate that Allstate did, in fact, rely on some -- they had all of this and that's what they relied on in order to issue that Longworth letter, I'll gladly entertain a motion for reconsideration. All right?

Allstate filed a motion for reconsideration. In denying the motion, the judge found there was no misrepresentation of plaintiff's relationship to Ruiz, but rather, their reference to

7                                          A-1514-16T3

her as his daughter-in-law was "simply an inaccurate way to characterize their legal relationship." The judge focused on the verified complaint and found plaintiff's allegation that she did not reside with any relative who owned an insured motor vehicle should have prompted Allstate to further investigate and clarify the parties' relationship before granting Longworth consent to settle. The judge ruled that Allstate was equitably estopped from asserting the step-down provision based on its failure to investigate. The judge ignored evidence that Allstate was investigating plaintiff's UIM claim before it granted Longworth consent, and had sent her a notice of claim form requesting verification of her address and relationship to the named insured, to which she did not respond. The judge also ignored that plaintiff certified in her interrogatory answers that Ruiz was her father-in-law and attached documents showing George was her spouse and they resided with Ruiz at the time of the accident.

Allstate filed a motion to vacate, which the judge denied. The judge again focused on the verified complaint and found Allstate should have determined at the inception of this litigation that there was no UIM coverage because plaintiff was not a resident relative of the named insured. The judge ignored the defenses Allstate asserted in its answer to the complaint, which Allstate filed approximately thirty days after the complaint was filed.

A-1514-16T3

The judge also found plaintiff detrimentally relied on Allstate's failure to act sooner based on the time and resources she expended preparing the case.

On appeal, Allstate argues that the policy's step-down provision applies because plaintiff was not a resident relative of the named insured and could only claim coverage in the amount of $15,000 as a passenger in the named insured's vehicle. Allstate concludes that plaintiff was not entitled to UIM benefits under the policy because she received $15,000 from the tortfeasors.

Allstate also argues it should not be equitably estopped from asserting the step-down provision for not investigating plaintiff's relationship to Ruiz before granting Longworth consent to settle. Allstate posits that Ruiz and plaintiff misled it into believing she was entitled to UIM benefits by misrepresenting that she was Ruiz's daughter-in-law, and plaintiff repeated that misrepresentation in her certified interrogatory answers. Allstate avers that it investigated the matter and acted promptly to invoke the step-down provision when it discovered the misrepresentation.

Allstate further argues, in part, that because of the misrepresentation, granting Longworth consent to settle did not equitably estop it from asserting the step-down provision. Lastly, Allstate argues that the material misrepresentation made about

plaintiff's familial relationship to Ruiz precludes coverage under the policy's fraud or misrepresentation provision. Allstate maintains that plaintiff repeatedly and falsely asserted she was a resident relative of the named insured, and falsely asserted she detrimentally relied on Allstate's consent to settle when she had actually settled with the tortfeasors months before receiving the consent to settle letter.

Plaintiff counters that the judge properly applied equitable estoppel to bar Allstate from denying UIM coverage based on its delay in asserting the step-down provision in response to the UIM claim/Longworth notices and verified complaint, all of which evidenced she sought coverage as a passenger, not a resident relative of Ruiz. She also argues that she detrimentally relied on Allstate's delay in investigating her UIM claim, and there was no material misrepresentation because she always identified herself as a passenger in Ruiz's vehicle.

Our review of a ruling on summary judgment is de novo, applying the same legal standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017). Thus, we must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007) (quoting

Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536 (1995)). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 179 (2016) (quoting R. 4:46-2(c)).

"To defeat a motion for summary judgment, the opponent must 'come forward with evidence that creates a genuine issue of material fact.'" Cortez v. Gindhart, 435 N.J. Super. 589, 605 (App. Div. 2014) (quoting Horizon Blue Cross Blue Shield of N.J. v. State, 425 N.J. Super. 1, 32 (App. Div. 2012)). "[C]onclusory and self-serving assertions by one of the parties are insufficient to overcome the motion." Puder v. Buechel, 183 N.J. 428, 440-41 (2005) (citations omitted).

If there is no genuine issue of material fact, we must then "decide whether the trial court correctly interpreted the law." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (citation omitted). We review issues of law de novo and accord no deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013). "[F]or mixed questions of law and fact, [an appellate

court] give[s] deference . . . to the supported factual findings of the trial court, but review[s] de novo the lower court's application of any legal rules to such factual findings." State v. Pierre, 223 N.J. 560, 577 (2015) (citations omitted). Applying the above standards, we conclude that Allstate, not plaintiff, was entitled to summary judgment.

"UIM coverage . . . is 'personal' to the insured. Coverage is linked to the injured person, not the covered vehicle." Aubrey v. Harleysville Ins. Cos., 140 N.J. 397, 403 (1995) (citation omitted). "UIM coverage provides 'as much coverage as the insured is willing to purchase, for his or her protection[,] subject only to the owner's policy liability limits for personal injury and property damages to others.'" Ibid. (quoting Prudential Property & Casualty Ins. Co. v. Travelers Ins. Co., 264 N.J. Super. 251, 259-60 (App. Div. 1993)).

Because it is linked to the injured party, "[o]ur case law recognizes the legitimacy of step-down provisions even though they may result in differential treatment of similar plaintiffs based on the existence of other available insurance." Pinto v. N.J. Mfrs. Ins. Co., 183 N.J. 405, 412 (2005). Accordingly, where a passenger seeks to recover damages under the UIM provision of the car owner's insurance policy in which the passenger was injured, an "insurer[] [is] free to modify the insurance policy language

12

to limit the UIM coverage of [the] passenger[] and others who are named insureds under other insurance policies." Id. at 412-13 (citing Magnifico v. Rutgers Cas. Ins. Co., 153 N.J. 406, 418 (1998)).

Disputes involving insurance contracts are resolved by looking to the language of the policy. Riccio v. Prudential Prop. & Cas. Ins. Co., 108 N.J. 493, 499 (1987). As contracts of adhesion, insurance policies are subject to special rules of interpretation. Araya v. Farm Family Cas. Ins. Co., 353 N.J. Super. 203, 206 (App. Div. 2002). Insurance policies should be construed liberally and in favor of the insured's reasonable expectations of coverage. Gibson v. Callaghan, 158 N.J. 662, 671 (1999). Notwithstanding, words of an insurance policy should be given their ordinary meaning. Zacarias v. Allstate Ins. Co., 168 N.J. 590, 595 (2001). "In the absence of any ambiguity, courts 'should not write for the insured a better policy of insurance than the one purchased.'" Gibson, 158 N.J. at 67 (quoting Longobardi v. Chubb Ins. Co., 121 N.J. 530, 537 (1990)). If the expressed language of the policy is clear and unambiguous, the "court is bound to enforce the policy as it is written." Royal Ins. Co. v. Rutgers Cas. Ins. Co., 271 N.J. Super. 409, 416 (App. Div. 1994) (quoting Flynn v. Hartford Fire Ins. Co., 146 N.J. Super. 484, 488 (App. Div. 1977)). "These principles have been

13

applied to enforce step-down provisions in insurance policies, provided the provisions are expressed in clear and unambiguous language." Morrison v. Am. Int'l Ins. Co. of Am., 381 N.J. Super. 532, 538 (App. Div. 2005).

A policy of insurance may be voided by an insurer for a willful misrepresentation of a material fact or circumstance made before or after the claimed loss. Longobardi, 121 N.J. at 539-40. As our Supreme Court stated:

> [W]hen an insurer clearly warns in a "concealment or fraud" clause that it does not provide coverage if the insured makes a material misrepresentation about any material fact or circumstance relating to the insurance, the warning should apply not only to the insured's misrepresentations made when applying for insurance, but also to those made when the insurer is investigating a loss. Such misrepresentations strike at the heart of the insurer's ability to acquire the information necessary to determine its obligations and to protect itself from false claims. Thus, an insured's commitment not to misrepresent material facts extends beyond the inception of the policy to a post-loss investigation.
>
> [Id. at 539.]

A misrepresentation is material if, when made, "a reasonable insurer would have considered the misrepresented fact relevant to its concerns and important in determining its course of action." Id. at 542. It must relate to a subject relevant to an investigation by the insurer of the claim and its determination

14

of a proper course of action. <u>Palisades Safety & Ins. Ass'n v. Bastien</u>, 344 N.J. Super. 319, 322-23 (App. Div. 2001), <u>aff'd</u>, 175 N.J. 144 (2003). To be material, the false statement must have "naturally and reasonably influence[d] the judgment of the underwriter in making the contract at all, or in estimating the degree or character of the risk, or in fixing the rate of premium." <u>Mass. Mut. Life Ins. Co. v. Manzo</u>, 122 N.J. 104, 115 (1991) (alteration in original) (quoting <u>Kerpchak v. John Hancock Mut. Life Ins. Co.</u>, 97 N.J.L. 196, 198 (1922)). "Forfeiture does not depend on proof that an insured harbored an intent to recover proceeds to which he or she was not entitled. An insurer may refuse payment if an insured willfully misrepresented material facts after a loss, even if the insured did not harbor such an intent." <u>Longobardi</u>, 121 N.J. at 540.

Plaintiff does not dispute that the step-down provision applies, nor could she. The step-down provision clearly and unambiguously limited coverage to $15,000 for those who are not the named insured, spouse of the named insured, or resident relatives of the named insured. Plaintiff did not fall into any of these categories, and thus, neither she nor Ruiz could have had a reasonable expectation of UIM coverage. Plaintiff was never entitled to UIM benefits under the policy.

In addition, the policy's fraud or misrepresentation provision voids coverage. Shortly after the accident, Ruiz and plaintiff misrepresented to Allstate that she was his resident daughter-in-law. Notwithstanding plaintiff's subsequent UIM claim/<u>Longworth</u> notices and verified complaint identifying herself as a passenger in Ruiz's vehicle, when Allstate attempted during its investigation to verify her relationship to Ruiz, she certified in her interrogatory answers that he was her father-in-law and submitted documents showing his son was her spouse. Regardless of how plaintiff characterized her relationship to Ruiz, she knew she was not married to George and that Ruiz was not legally her father-in-law. As such, she knowingly made a material misrepresentation of fact during Allstate's investigation of her UIM claim, on which Allstate reasonably relied in granting <u>Longworth</u> consent to settle. This misrepresentation voided UIM coverage under the policy.

Further, we conclude that Allstate was not equitably estopped from asserting the step-down provision and denying UIM coverage. "Estoppel is an equitable doctrine, founded in the fundamental duty of fair dealing imposed by law." <u>Marsden v. Encompass Ins. Co.</u>, 374 N.J. Super. 241, 249 (App. Div. 2005) (quoting <u>Casamasino v. City of Jersey City</u>, 158 N.J. 333, 354 (1999)). "The doctrine is designed to prevent injustice by not permitting a party to

repudiate a course of action on which another party has relied to his detriment." Ibid. (citation omitted). A party invoking equitable estoppel must show that

> the alleged conduct was done, or representation was made, intentionally or under such circumstances that it was both natural and probable that it would induce action. Further, the conduct must be relied on, and the relying party must act so as to change his or her position to his or her detriment.
>
> [Miller v. Miller, 97 N.J. 154, 163 (1984).]

Detrimental reliance is a key factor. See Boritz v. N.J. Mfrs. Ins. Co., 406 N.J. Super. 640, 649 (App. Div. 2009) (estoppel arises when the plaintiff justifiably relies on the UIM carrier's consent to settle); Barrett v. N.J. Mfrs. Ins. Co., 295 N.J. Super. 613, 618-19 (App. Div. 1996) (estopping the UIM carrier from denying UIM coverage because the plaintiff detrimentally relied on its consent to settle as the insurer's expressed or implied acknowledgment that its policy provides coverage).

An insurer's "[u]nreasonable delay in disclaiming coverage, or in giving notice of the possibility of such disclaimer . . . can estop an insurer from later repudiating responsibility under the insurance policy." Griggs v. Bertram, 88 N.J. 347, 357 (1982); Barrett, 295 N.J. Super. at 618. A showing of prejudice from the

delay "is critical to a finding of estoppel." <u>Shotmeyer v. N.J.</u> <u>Realty Title Ins. Co.</u>, 195 N.J. 72, 90 (2008).

Allstate made no expressed or implied acknowledgement that the policy provided UIM coverage to plaintiff. When Allstate granted <u>Longworth</u> consent to settle, it explicitly advised plaintiff that it made "no coverage references" and the consent to settle "only applie[d] to Longworth subrogation rights."

More importantly, plaintiff did not detrimentally rely on the <u>Longworth</u> consent to settle. She had settled her claim against the tortfeasors before submitting the UIM claim and first <u>Longworth</u> notice to Allstate, and received the settlement funds and executed a release four months before receiving the consent to settle letter.

Further, Allstate did not unreasonably delay in giving notice of the possibility of a disclaimer of coverage. Plaintiff did not submit her UIM claim until January 8, 2014. She identified herself as a passenger in Ruiz's vehicle, but did not specify whether she was a resident relative of Ruiz. On April 1, 2014, Allstate advised her it was investigating her claim and would attempt to resolve it once she returned the notice of claim form verifying her address and relationship to the named insured. Plaintiff did not return the form, but instead, filed a complaint on April 14, 2014, alleging she was a passenger in the vehicle insured by

Allstate and did not reside with any relative who owned an insured motor vehicle. Approximately one month later, Allstate filed its answer, asserting as affirmative defenses that plaintiff was excluded from UIM coverage under the policy and subject to the step-down provision. Thus, Allstate gave plaintiff notice of the possibility of a disclaimer of UIM coverage in its answer and did not unreasonably delay in so doing.

Nor did Allstate unreasonably delay in disclaiming coverage. Again, Allstate attempted to verify plaintiff's address and relationship to Ruiz in April 2014, but plaintiff did not return the notice of claim form. Instead, she served interrogatory answers, certifying Ruiz was her father-in-law. When Allstate discovered this misrepresentation on October 30, 2014, it disclaimed coverage twenty days later. This time period was not unreasonable, and there was no prejudice to plaintiff, as she was never entitled to UIM benefits under the policy.

Reversed and remanded for entry of an order dismissing this matter with prejudice.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1514-16T3